IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JONAS ELLWART,

                Petitioner,                OPINION and ORDER

  v.

                                        16-cr-70-jdp

UNITED STATES OF AMERICA,         18-cv-256-jdp

                Respondent.

---

Jonas Ellwart has filed a motion for post-conviction relief under 28 U.S.C. § 2255 to challenge the sentence he received after he pleaded guilty to conspiracy to distribute methamphetamine. He contends that his counsel was constitutionally ineffective by (1) refusing to let him see discovery; (2) giving him the wrong legal advice about the amount of prison time he faced by pleading guilty; and (3) telling him not to withdraw his plea at sentencing after learning that his maximum supervised release term was life, not three years as stated in the plea agreement.

I am denying Ellwart's motion because he has failed to show that he received ineffective assistance of counsel. I am also denying as moot the government's motion for an order that Ellwart waived his attorney-client privilege for the purpose of litigating his § 2255 motion. Dkt. 2. I do not need to review a declaration from Ellwart's counsel to resolve this case.

BACKGROUND

Ellwart was involved in a large-scale conspiracy to distribute methamphetamine in Wausau, Wisconsin. He entered into a written plea agreement with the government, agreeing to plead guilty to the one-count indictment. Dkt. 42 in 16-cr-70-jdp-2. That count carried a

maximum prison sentence of 20 years and maximum term of supervised release of life. The plea agreement included a provision stating that Ellwart "acknowledges his understanding that the Court is not required to accept any recommendations which may be made by the United States and that the Court can impose any sentence up to and including the maximum penalties set out above." *Id.*

At the January 25, 2017 plea hearing, I discussed with Ellwart what expectations he had, if any, as to the sentence that he might receive. I confirmed with Ellwart that his counsel had discussed with him the possibility of receiving the maximum penalties applying to the offense. Dkt. 85 in 16-cr-70-jdp-2 at 7. I explained how Ellwart's guideline range under the Federal Sentencing Guidelines would be calculated and that I would consider his guideline range as one factor in determining his sentence. *Id.* at 8–10. Then, I asked Ellwart a series of questions to confirm that his plea was knowing and voluntary. Ellwart acknowledged that he understood the terms of the agreement, including the rights he was giving up by pleading guilty and that he would not be free to withdraw his guilty plea, even if I decided not to follow the government's recommendations regarding sentencing. *Id.* at 11–14, 17. The government then summarized the evidence that would be offered at trial to prove Ellwart's guilt, including that Ellwart bought methamphetamine from Kyle Quintana and Anthony Rogers and sold it to others, that Ellwart controlled access to Quintana's stash house, and that Ellwart went to Minnesota with Rogers to purchase methamphetamine. *Id.* at 19–21. After the government's recitation of the evidence, Ellwart's counsel acknowledged that the government would be able to prove facts at trial showing that Ellwart was involved in the drug conspiracy. *Id.* at 23–24.

I then asked Ellwart to explain in his own words what happened. Ellwart stated that he owed Quintana money so he started doing "errands for him [like] watch[ing] his dog and

giv[ing] him rides places." *Id.* at 25. Ellwart then said that he "didn't know exactly why [Quintana] was going to those places, but I kind of had an idea of what he was doing and [he] still decided to assist him with it." *Id.* I asked follow-up questions regarding Ellwart's involvement in the drug conspiracy:

> Court: [W]hen you say you "had an idea," what did you think [Kyle Quintana] was doing?
>
> Ellwart: Like, I kind of figured he was selling methamphetamine, but I wasn't—I didn't never ask him about it, but I was pretty positive that's what he was doing.
>
> Court: Okay
>
> Ellwart: And I rode with Kayla Harris and [Anthony] Rogers one time. Kayla Harris asked me if I wanted to ride with. They were going to Minneapolis, and she said that she was getting a set of rims for her truck for giving Rogers a ride there, so I was like, sure, I'll ride with.
>
> Court: Okay. Did you know what the purpose of the trip was other than the rims?
>
> Ellwart: Yeah. I figured so.
>
> Court: Okay. And what was that purpose?
>
> Ellwart: So Rogers could pick up methamphetamine. Other than that, I would watch Kyle [Quintana's] dogs, and he would give me methamphetamine for watching them because I smoked a lot.

*Id.* at 26. I then asked Ellwart whether he agreed with the government's proffer that he was "the go-between between Mr. Rogers and Ms. Harris." He responded, "yes," and also conceded that he "helped Mr. Rogers break down the drugs into [bags]" and exchanged money and drugs between Harris and Rogers. *Id.*

The probation office prepared a presentence investigation report that described Ellwart's involvement in the conspiracy. Dkt. 60 in 16-cr-70-jdp-2. The report stated that Ellwart bought methamphetamine from Jacob Loose, Kyle Quintana, and Anthony Rogers; that

3

Quintana used Ellwart's sister's house as a stash house; and that Ellwart controlled access to Quintana's stash, which was kept in the basement of the house. *Id.* at ¶¶ 24–65. Ellwart filed objections to the PSR, denying that he controlled access to the stash at his sister's house and stating that the basement was available to anyone who needed access to it. Dkt. 64 in 16-cr-70-jdp-2. He also objected to the drug quantity that was being attributed to him, and he argued that the government was relying too heavily on the statement of Anthony Rogers in determining the drug quantity and his level of involvement in the conspiracy. *Id.* at 2.

Because Ellwart contested the drug quantities being attributed to him, the court held an evidentiary hearing prior to sentencing. The government called several witnesses, including Kyle Quintana and Anthony Rogers. Dkt. 86. After the evidentiary hearing, I could not conclude, by a preponderance of the evidence, that the drug quantity attributable to Ellwart was more than five kilograms of methamphetamine. *Id.* at 169. But I also concluded that Ellwart was not a minor player in the conspiracy. *Id.* at 172. I found that Ellwart had a total offense level of 32 and a criminal history category of II, resulting in an advisory guideline imprisonment range of 135 to 168 months.

Before sentencing Ellwart, I noted that the plea agreement had misstated the maximum term of supervised release as three years, when the maximum term for the charged offense was actually life supervision. *Id.* at 167. I told Ellwart that I was thinking about a five-year term of supervised release and I gave him the opportunity to withdraw his plea based on the error in the plea agreement. *Id.* at 168. Ellwart conferred with his attorney and stated that he did not want to withdraw his plea. *Id.* I then explained that a downward variance was appropriate in light of Ellwart's youth and non-violent criminal history, and I sentenced him to 120 months of imprisonment and five years of supervised release.

Ellwart did not file a direct appeal. He filed a motion under 28 U.S.C. § 2255 on April 12, 2018.

ANALYSIS

Ellwart has moved to vacate his conviction under 28 U.S.C. § 2255. A petitioner who pleaded guilty, like Ellwart, can ordinarily challenge a conviction only by showing that the plea was unknowing or involuntary. *United States v. Broce*, 488 U.S. 563, 574 (1989). *See also Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (a guilty plea is constitutionally valid "if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences'"). Ellwart argues that his plea was not knowing or voluntary because his counsel provided constitutionally ineffective assistance. To succeed on a claim that an attorney rendered ineffective assistance of counsel when a defendant entered a guilty plea, the defendant must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on proceeding to trial. *Torzala v. United States*, 545 F.3d 517, 524 (7th Cir. 2008). *See also Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ellwart argues that his counsel was ineffective in three ways, but each of his arguments is meritless.

First, Ellwart argues that counsel never provided him a copy of the discovery or any other documents in this case, despite Ellwart asking counsel several times to show him the discovery. But even if Ellwart did not see all of the discovery exchanged in this case, "a guilty plea entered by a defendant who does not see the prosecution's hand in advance will still be voluntary if, as was true in this case, the plea follows disclosure of an adequate factual basis."

5

*United States v. Underwood*, 174 F.3d 850, 854 (7th Cir.1999). *See also United States v. Graf*, 827 F.3d 581, 584 (7th Cir. 2016) ("[A] defendant can offer a knowing and voluntary plea without having received full discovery from the government."); *United States v. Johns*, 74 F. App'x 633, 634 (7th Cir. 2003) (rejecting defendant's attempt to withdraw plea on the ground that attorney failed to share discovery because defendant pleaded guilty after government disclosed factual basis for charge). The record shows that Ellwart was aware of the factual basis for the government's case against him. During both the plea hearing and the lengthy evidentiary hearing, the government disclosed how it would prove its case against Ellwart at trial. Ellwart chose to plead guilty, agreeing that the government could prove the elements of the charged offense. Ellwart does not say why he thinks viewing the discovery would have changed his decision to plead guilty. For example, he does not say that the discovery contained exculpatory evidence that undermined the government's case against him. He also does not say why he gave sworn testimony in which he conceded that he was involved in the conspiracy if he believed that documents provided in discovery would have exonerated him. *See Graf*, 827 F.3d at 584 ("A defendant's motion to withdraw [guilty plea] is unlikely to have merit if it seeks to dispute his sworn assurances to the court."); *United States v. Collins*, 796 F.3d 829, 834 (7th Cir. 2015) (district court may presume truth of defendant's prior sworn statements in plea colloquy). He has not shown that he would have insisted on proceeding to trial had he been given copies of the discovery in this case.

Second, Ellwart argues that counsel told him he was facing only six years imprisonment if the court agreed with the government's argument relating to the drug quantity attributable to Ellwart, and only three to four years imprisonment if the court used a lower drug quantity. Ellwart says that counsel was wrong because Ellwart was actually facing a minimum sentence

of 10 years. This argument fails for multiple reasons. Ellwart was not charged with a crime that triggered a 10-year mandatory minimum. At the plea hearing, I reviewed with Ellwart the maximum penalties he was facing, including the fact that his charge carried up to 20 years in prison. Dkt. 85 in 16-cr-70-jdp-2 at 7. Ellwart said he understood. Ellwart also admitted at the plea hearing that no one had told him he would get a particular sentence and that he had no reason to think he might get a particular sentence. *Id.* at 16–17. He also admitted at the plea hearing that the government could prove his guilt at a trial. *Id.* at 26. Ellwart's statements at the plea hearing are presumed truthful, *United States v. Collins*, 796 F.3d 829, 834 (7th Cir. 2015), and he has offered no explanation for why he would have given false statements in court. His unsupported assertion that counsel gave him in correct information that rendered his plea unknowing is simply implausible.

Ellwart's third argument fails for similar reasons. He argues that counsel erred by telling him not to withdraw his plea after he learned that he could receive lifetime supervision, rather than the maximum of three years of supervised release that was misstated in the plea agreement. But counsel's advice that Ellwart not withdraw his plea was reasonable. At the sentencing hearing, I identified the error in the plea agreement and I told Ellwart that I was considering a 5-year term of supervised release. Ellwart stated that he did not want to withdraw his plea. He says now that he would have withdrawn his plea had his attorney not convinced him otherwise, but he does not explain why this is so. Under the circumstances, his assertion is unbelievable. I am not persuaded that any defendant in Ellwart's circumstances, who had admitted already that he was involved in the drug conspiracy, would choose to proceed to trial solely because he was facing two additional years of supervised release.

In sum, the record shows that Ellwart was aware of the consequences and benefits of entering into the plea agreement and decided to plead guilty knowingly and voluntarily. He has not shown that his counsel was ineffective.

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must issue or deny a certificate of appealability when entering a final order. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, I conclude that Ellwart's motion under 28 U.S.C. § 2255 is without merit. Because reasonable jurists would not debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED that:

1. The United States's motion for entry of an order that petitioner Jonas Ellwart waived his attorney-client privilege for purposes of litigating his 28 U.S.C. § 2255 motion, Dkt. 2, is DENIED as moot.

2. Ellwart's petition under 28 U.S.C. § 2255 is DENIED.

3. Ellwart is DENIED a certificate of appealability. He may seek a certificate from the court of appeals under Fed. R. App. P. 22.

Entered May 23, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge